# Riffert, Appellant, v. Lehigh Valley Coal Company.

*Sheriff's sale—Irregularities—Parties—Executors and administra-
tors—Ejectment—Record—Evidence—Sheriff's deed.*

1. Where an administrator d. b. n. c. t. a. is substituted as a de-
fendant in a judgment after a writ of venditioni exponas has been
issued and stayed, and thereafter he permits a pluries writ to be issued
and the property to be sold by the sheriff, and a sheriff's deed executed
and acknowledged, the substituted defendant will be held to have
waived any irregularities that would have affected the innocent pur-
chaser at the sale, such for instance as the fact that the executor of the
defendant was the substituted defendant at the time the fieri facias
had issued, although prior to such time he had renounced as executor.

2. A sheriff's sale cannot be successfully attacked sixty years after
its date in an action of ejectment, because the purchaser at the sale
had been an assignee for the benefit of creditors of the defendant in
the execution, where there is no evidence to show that the purchaser

630 RIFFERT, Appellant, *v.* LEHIGH VAL. COAL CO.

at the sale had ever accepted under the deed of assignment, or ever knew that he was named therein.

3. In an action of ejectment where the defendants rely on a sheriff's deed executed and recorded sixty years prior to the date of the action, it is immaterial that one of the writs of execution cannot be found, where the record shows that the writ was issued.

4. Where a sheriff's deed was recorded in the sheriff's deed book in 1840, it is immaterial that no minute of the acknowledgment of the deed appeared in the common pleas minutes of that year.

Argued May 8, 1911. Appeal, No. 326, Jan. T., 1911, by plaintiffs, from judgment of C. P. Northumberland Co., May T., 1908, No. 52, on verdict for defendant in case of John R. Riffert et al. v. Lehigh Valley Coal Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Ejectment for land in Mt. Carmel township. Before SAVIDGE, P. J.

At the trial the court charged as follows.

The plaintiffs in this case, numbering nearly a hundred, are the heirs of Valentine Brobst, deceased. Valentine Brobst lived in the early part of the last century and up to his death, which occurred on March 18, 1837, in the city of Reading, Berks county, this state, and owned large tracts of land in several counties, among others the tract of land for which this action of ejectment has been brought. He owned that tract of land from 1816 up to the time of his death.

On October 26, 1835, one William Silvis, entered in this court a judgment, by confession, against Valentine Brobst, which judgment was for $4,500, real debt. No steps were taken towards the collection of this judgment by execution prior to the death of Valentine Brobst.

February 15, 1837, three days more than a month before his death, Valentine Brobst made an assignment for the benefit of creditors to William Silvis and another. Although proceedings were subsequently had under the deed of assignment, as shown by the records of the Berks county

courts, this assignment made in Berks county and there recorded (Berks county having jurisdiction of their accounts), etc., yet it nowhere appears that William Silvis ever accepted the trust under this assignment, or that he ever knew that he was one of the assignees named therein. William Silvis, the plaintiff in the judgment, about which I have just spoken, lived in Northumberland county, many miles distant from Reading and in those days a long journey.

Valentine Brobst died testate, and one of the executors of his will was a man by the name of Keim. Keim never took out letters testamentary, as appears from the records of the orphans' court of Berks county but, by a paper dated April 18, 1838, renounced the trust. When this paper was filed does not appear, but one Samuel S. Jackson was granted letters de bonis non cum testamento annexo, on May 23, 1838. Notwithstanding Keim had never taken out letters testamentary, on April 23, 1838, he was substituted as executor in the case of William Silvis v. Valentine Brobst, the judgment I spoke of a few moments ago. This substitution was by agreement of one Dunn, acting as attorney for Keim executor, and is dated April 16, 1838, the agreement for substitution antedating the renunciation by two days. The judgment then stood William Silvis v. Keim, executor of Brobst.

On May 10, 1838, a writ of fieri facias was issued; that writ was stayed. On May 17, 1838, an alias writ of fieri facias was issued and under that writ condemnation and inquisition proceedings were had and the land condemned. On September 10, 1838, a writ of venditioni exponas was issued, which was stayed by plaintiffs' attorney. On September 25, 1839, a pluries venditioni exponas issued, an alias in the meantime having been issued and stayed. Up to this time the judgment stood and all the proceedings thereon, Silvis v. Keim, executor. On November 30, 1839, Samuel S. Jackson, administrator, etc., was, by agreement, substituted. January 29, 1840, the third pluries venditioni exponis was issued, the second having, in the meantime,

been stayed and under this the lands levied upon were sold (among which was the land in suit in this case), to William Silvis for the sum of $9,800. The sheriff's deed was duly acknowledged. This sheriff's title to Silvis became and is now vested in the defendant in this case.

It is contended by the plaintiffs that this sheriff's sale was void, first, because there was, as they allege, no personal representative of the dead defendant on record. He had not been brought into court and was not upon the record at the time the fieri facias issued and at the time of the inquisition and condemnation of the land. The record itself is regular. We only know from proof, introduced here upon the trial de hors the record, that Keim had never accepted the trust imposed upon him by the will of Valentine Brobst. He was named in the will as one of the executors of Valentine Brobst. He was substituted by an agreement of an attorney acting for him, but there is nothing in the case to show that there is any irregularity in this record which was brought to the knowledge of Silvis, the purchaser at the sheriff's sale, and we believe that the irregularity cannot affect his title.

But subsequent to the condemnation proceedings before the sale, namely, before the second and third pluries writs of venditioni exponas issued, Jackson, the duly appointed administrator with the will annexed, was substituted and came upon the record as defendant by agreement. He was a party to the record, etc., at the time of the sheriff's sale and the acknowledgment of the deed by the sheriff.

We are of the opinion that under the authorities cited, especially, Diese v. Fackler, 58 Pa. 109; Spragg v. Shriver, 25 Pa. 282, he will be held to have waived any irregularities that would affect an innocent purchaser, if there were any that had theretofore taken place in the proceedings. He could have taken a rule and have had the sheriff's sale set aside on account of the irregularities that are now here alleged and no doubt if he had done so the sale would have been set aside. If he stood by and permitted the sale to

go on and the sheriff's deed to be acknowledged, the title, taken by an innocent purchaser, cannot be affected by these irregularities, which should have been taken advantage of before and which the acknowledgment of the sheriff's deed cured.

There is complaint, on the part of the plaintiffs, that Silvis became a purchaser at this sale. They say that was in fraud of the rights of their ancestors, the then heirs of Valentine Brobst, because he was one of the assignees named in the deed of assignment, about which I have spoken. The party who alleges fraud must prove it. There is not a particle of evidence, as I have said, that he ever accepted under this deed of assignment or even knew he was named therein, and courts and juries are not permitted to lightly infer fraud, and in this case you would have to find it without any evidence, which is not permitted.

Another complaint is, that one of the writs of execution cannot be found. Very naturally the papers, in a case where they were so multitudinous as in this case, would be lost in such a long lapse of time and it is no surprise that they are not to be found. The record shows that they were issued and that is sufficient.

Another complaint is, that there is no minute of the acknowledgment of the deed in the common pleas minutes of April Term, 1840. There is a minute of the acknowledgment of the deed contained in the book called the sheriff's deed book and the minute is in due form, signed by the prothonotary. We know of no law that will compel a prothonotary to keep his minutes all in one book or that will prevent him keeping the minutes of the court in a book which may be termed and labeled on the back thereof "Sheriff's Deed Book." Some fifteen or sixteen deeds were acknowledged that April Term, as shown by the minutes and record of the acknowledgment contained in this sheriff's deed book, or this so-called sheriff's deed book, and very few, if any of them, are minuted in the regular common pleas minute book of that date. We think

that the law has been complied with in the minute contained in the sheriff's deed book.

We have come to the conclusion that this sale was regular on its face; that there was no notice to bidders and buyers of any irregularity and that Silvis took a good title to these lands. Silvis and those who claim under him have paid the taxes on these lands from 1840, from the time of this sheriff's sale, down to the present time. They took possession of the lands back in the fifty's or sixty's and even earlier than that, built some houses on them as the evidence shows and collected rents. The houses have been occupied from 1854 to the present time and the rents have been paid over to the Lehigh Valley Coal Company, the present owners. They have, during all these years, been collecting the royalties for sand and stone, and other improvements have been put upon the property.

Even though it were to be determined that the Silvis title was void, yet we believe that the plaintiffs at this late day, after the lapse of more than sixty years, would not be permitted to come in and assert title. However that may be, we feel confident that Silvis took a valid title and, of course, it is admitted that this sheriff's sale was regular and the sheriff's vendee took good title and therefore the plaintiffs cannot recover. The only thing for you to do, gentlemen of the jury, is to return a verdict in favor of the defendant.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* among others was in giving binding instructions for defendant.

*George B. Reimensnyder*, with him *James Scarlet, George M. Lutz* and *George H. Neff*, for appellants.—A sheriff's deed is not valid to pass the title of real estate, without acknowledgment in open court and a record of the acknowledgment entered on the minutes of the court: Bellas v. McCarty, 10 Watts, 13; Lee v. Newland, 164 Pa. 360;

Duff v. Wynkoop, 74 Pa. 300; Chambers v. Carson, 2 Whart. 437; DeHaven's App., 38 Pa. 373.

The execution was void when issued against owner who died without notice to legal representatives: Wood v. Colwell, 34 Pa. 92; Cadmus v. Jackson, 52 Pa. 295; Taylor v. Young, 71 Pa. 81; Sheetz v. Wynkoop, 74 Pa. 198; Wallace v. Holmes, 40 Pa. 427; Taylor v. Savage, 42 U. S. 282; Meredith v. Scallion, 51 Ark. 361 (3 L. R. A. 812).

The assignee could take no title to himself individually, to property purchased at sheriff's sale on his own judgment, but would hold in trust as assignee for assignor or his heirs: Wilt v. Franklin, 1 Binn. 502; Sheerer v. Lautzerheizer, 6 Watts, 543; Eyrick v. Hetrick, 13 Pa. 488; Marks' App., 85 Pa. 231; Golden's App., 110 Pa. 581; Heckman v. Messinger, 49 Pa. 465; Seal v. Duffy, 4 Pa. 274; Klapp v. Shirk, 13 Pa. 589; Dallam v. Fitler, 6 W. & S. 323; Scull v. Reeves, 3 N. J. Eq. 84; McKinney v. Rhoads, 5 Watts, 343; Reamer v. Lamberton, 59 Pa. 462.

It was a fraud upon the part of the assignee to sell assigned property on his judgment and become the purchaser at such sale: Mellon's App., 32 Pa. 121; Vandyke v. Christ, 7 W. & S. 373; Rigler v. Cloud, 14 Pa. 361; Campbell v. McLain, 51 Pa. 200; Musselman v. Eshleman, 10 Pa. 394; Chronister v. Bushey, 7 W. & S. 152.

*D. W. Kaercher*, with him *S. P. Wolverton, Jr.*, and *F. W. Wheaton*, for appellee.—The certificate of Samuel D. Jordan, prothonotary, shows that the sheriff's deed poll was acknowledged in open court on April 9, 1840, and duly recorded in book B, page 201. The deed was also recorded in the recorder's office in deed book F F, page 577. This was sufficient: Strimpfler v. Roberts, 18 Pa. 283.

The proceedings were regular, and were not excepted to by the heirs or creditors of Valentine Brobst, and led up to a public sale by the sheriff, and vesting of the title by a sheriff's deed poll, acknowledged and recorded, in Silvis,

under whom the defendant claims: Bear Valley Coal Co. v. Dewart, 95 Pa. 72; Read v. Goodyear, 17 S. & R. 350.

Admitting that there was fraud on the part of Silvis in purchasing the property at sheriff's sale, that could not affect an innocent purchaser from him, without proof of notice of existing equities: Critchlow v. Critchlow, 8 Sadler, 304; Chorpenning's App., 32 Pa. 315; Fisk v. Sarber, 6 W. & S. 18.

PER CURIAM, July 6, 1911:

The facts developed at the trial fully appear in the charge of the learned trial judge and they warrant his direction of a verdict for the defendant.

The judgment is affirmed.